Please call the next page. 4-17-0054, Dean Nadine Rund v. Workers' Compensation Comm'n. Counsel may proceed. May it please the court, my name is Kevin Morrison. I represent the injured employee and this claim is Nadine Rund. This is a fairly singular issue of an accident defense and whether her fall down the stairs on February 21, 2014, was arising out of her employment. I would argue that the commission incorrectly applied the facts in this claim and therefore de novo review would be warranted because they used an incorrect standard when they applied the facts of the claim. Neither party or neither the commission nor respondent disputes that this was in the course of. So the big issue is this injury itself was arising out of. And so far up to the point where the commission correctly realized this was a neutral risk analysis, I have no problem. Their analysis is correct. But after that point when they start, when it comes to the next step in applying the facts, I believe they added extra standards and simply disregarded facts that were established under a testimony that's corroborated by the only other testifying witness. Well generally neutral injuries owing to neutral risks do not arise out of employment. They're only compensable when the employee was exposed to the risk to a greater degree than the general public, either qualitatively or quantitatively, right? Correct. Okay. So she's traversing stairs. It's an activity of everyday life. So why was she exposed to the risk greater than the public either qualitatively or quantitatively? And how does the record establish that? Well, I believe there's a couple ways the record establishes that, Your Honor. The first way is the circumstances surrounding it, the injury. The injury occurred at 420. Her shift ended at 430. But more importantly, the facility was short-staffed. This is according to the testimony of both the petitioner and the only other testifying witness, Janet Franks. There was an LPN, a licensed practitioning nurse, that was not available that day. Fridays are typically busier days. And according to Janet Franks, February is actually for some reason a particularly busy month. More importantly as well is from 3 o'clock to 4 o'clock that day, Ms. Rund was working a program called Dial-A-Nurse where she was answering questions of students instead of doing her normal duties. But her normal duties don't go away. She still has to do them. So she has 90 minutes of work to do the final 30 minutes of her, to finish up all of her tasks for the day. Both witnesses testified to that. So Ms. Rund was delivering a prescription. She contacted the student. It was 420 in the afternoon. She said, come pick up your prescription. Unfortunately, you tested positive. You need an antibiotic. Please come pick it up. So are you sort of saying that her job duties required her to rush that day? I'm saying the circumstances of her employment required that she rush to complete all of her tasks yesterday. And there is case law that supports that there's a qualitative increased risk under the neutral risk analysis. Correct. What do you make of the other commission's decision where they say, this is page four of the decision. It says, however, statements to the effect that petitioner had more work to do than usual because Fridays in February are an especially busy time are tautological and not elucidating. More to the point, while petitioner might well have been working at a pace that was faster than was her habit, felt rushed, and presumably was less careful than was her habit in descending the stairs, explanations of this kind go to petitioner's subjective experience and are immaterial in the final analysis. I'm not exactly sure how to interpret that language. But if it's to be interpreted that the petitioner's hurrying does not go into the analysis of whether or not this was an increased risk from a qualitative standpoint, does that misstate the law? I believe it does, Your Honor. And that's my main argument is the commission acknowledges that she may have been doing this. It wasn't a question of did they believe she was doing it or not. Was there contrary evidence? Not to my knowledge, Your Honor. There was no other testifying witness. Again, the one witness they didn't mention at all in their facts and their franks, I think, corroborated everything Ms. Runt testified to. And so my read of that, Your Honor, is the commission saying even if she was rushing, which they didn't say they didn't believe, we can put you at a quantitative. So just on that aspect alone, put aside the quantitative part of the case. But if the commission determined that as a matter of law, petitioner's hurrying to accomplish a task should not be considered in determining whether or not it was a compensable neutral risk, what should this Court do? Well, I believe that the overwhelming facts represented from her testimony would support that this claim is very in line with the hearing that Williams is. And this Court should find that the fact that she was hurrying to complete her work-related tasks was sufficient evidence to show that she was at an increased risk. So you're saying it shouldn't be a remand for the Court to consider it? Correct. I mean, if the Court would, they could just reinstate the opinions of Arbitrator Gallagher and I would be fine with that. What's the testimony in the record that said she was hurrying? What did she say? I believe she stated that she doesn't recall what caused her to fall, but she did recall that she was in a rush at the time. She was in a hurry to complete her task. What I have in here is that the program she was involved in put her a little behind and forced her to work a little bit faster. Correct. Did she actually say she was moving faster when she fell down the stairs? I believe when the question came up, she actually stated, do you know what caused you to fall? And she said, no, I just recall that I was, and I don't, excuse me if I'm misquoting her exact adjective, but I believe she was alleging she was hurrying. And why was she hurrying? She was hurrying to deliver the prescription for the pharmacy. As she testified to, the pharmacy would like the prescription in an hour before they close at 5.30. That would put their closing at 4.30. So she was rushing at that point to try to get the prescription in so that the student who was already on their way could come pick up the prescription. Because the weekend was coming up too, wasn't that part of the reason? That is correct. So the pharmacy wants an hour to fill a prescription is what you're saying? Correct. And I think if we've all gone to Walgreens, they usually take that long. Well, there's evidence that the prescription could have been filled at a different pharmacy. Does it make a difference? I'm curious as to your response here. Does it make a difference as to why the individual is hurrying if it was based on a mistaken premise that she had to get this to the pharmacy in time? Or do we only look at whether or not she was, in fact, hurrying? I think there's two points of evidence, and I'll answer your question. The first is that she's a student, so I think the fact that she gets a discount at that is an important fact. The other fact is she was going home for the weekend, and the nature of her condition probably was not something you want to take home to Mom and Dad. However, to answer your question, I don't think so, because the task she was trying to do was still a work-related task. She wasn't rushing to go to a little Suzie soccer game. She was trying to get a prescription that she had already told the student to come pick up. Counsel, did she testify? She was actually trying to submit a prescription to a pharmacist. Correct, Your Honor. Yeah, let's be specific about that. And so that's what the activity was. Correct. Did she testify how many times she traversed the stairs? She did, Your Honor. She testified that she tests 10 to 15 times on a typical day. So that was in the record? That was in the record, Your Honor. And then Janet Franks, the other nurse who was working that day, testified, I go up and down those stairs quite frequently. So that's on the quantitative distinction part of neutral. Was there any evidence in the record how many times a day the average person goes up and down the stairs? There was not, Your Honor. Well, then how do we know that there's a quantitative distinction? Well, I think you have to look at, even though these staircases were open to the public, the general student or anyone who's not employed there is not going up and down those stairs 15 times. I don't think it's those stairs. The danger is traversing stairs. It has to be compared to how many times the average person traverses stairs on a daily basis. I don't think it really makes any difference where they're at. And there's no evidence in this case. So this case goes on a qualitative distinction because she was hurrying? I believe so, Your Honor. Your Honor, I also think that the court could determine that going up and down a staircase 15 times a day every day could put a person at an increased risk compared to, say, myself. Did they find that specific statement? Oh, the 15 times, Your Honor? No, that they found that to be the case, that the claimant was traversing stairs to a greater extent than a member of the general public? No, Your Honor. So what I'm talking about, it still goes back down to the qualitative, doesn't it? I mean, isn't that your argument? I guess my argument, Your Honor, would be that it could be. Because there's nothing in the record. Correct. What is in the record? Just the fake statement I was hearing? Well, there is in the record was circumstances that were supported by the circumstances of why she was in a rush, supporting her testimony that she was in a rush to continue her employment, which she states makes her less susceptible or less cautious and essentially caused her to fall. Counsel, are you familiar with the case of Village of Villa Park? I am, Your Honor. Okay. Now, looking at what I think is a summary, I have an injury compensable under neutral risk analysis because evidence established that the claimant had to traverse the stairs a minimum of six times a day. In that case, it was six times a day when he fell. Established that the frequency with which the claimant was required to traverse the stairs constituted an increased risk on a quantitative basis from that to which the general public is exposed. Was there any evidence in the record as to how, in that case, many times the general public, or did the six times carry the day in that case? I believe in that claim there was no testimony from my read of the decision that the six times was just considered sufficient, Your Honor. Even in the absence of how much the general public traversed? Correct. Okay. And finally, the other argument I would say… Well, that's kind of a rule that everybody understands. That would be my read of Village Grove. Okay. And I might be incorrect. We'll have to take a look at that. Now, the other issue I would say with this claim, Your Honor, would be that she was also carrying a work product in her hand, which was a prescription. Granted, it was a fairly small prescription. It was in her left hand. And as the Commission said, even inferred from her testimony, that it presumably increased her risk of fall because she had the prescription and she was unable to break her fall, and increasing her risk of injuring her right hand, the opposite. I believe the strongest argument, though, is the fact that there was unrebutted testimony that with unrebutted circumstances that the petitioner was in a hurry to complete her tasks that were work-related, thus putting her at a greater risk of injury than the general public. All right. So you're hanging in on both qualitative and quantitative, correct? Correct, Your Honor. Okay. I think that's all I have. Okay. Thank you, Counselor. We have time to respond. You may proceed. May it please the Court, Counsel, my name is Tim Stile, and I represent the respondent in this case. And if I may, I would like to address some of the questions that have been asked by this Court to opposing counsel. And one of the questions asked, if I understood it correctly from Judge Harris, was whether or not there was contrary evidence to her being in a hurry or in a rush. And I would like to point out to this Court's direct attention, C-260, which is the accident report, and it shows that she was walking down the stairs when her accident occurred. I would assert that walking down the stairs during this unexplained fall would be contrary to someone who was in a self-perceived rush. And secondly, there was questions from Judge Hudson concerning the Village Park case where it was six times a day. From my reading, I did see some facts in that case that were different than our case, that were distinguishable. One were that the stairs that were in question were not open to the general public. And also, the use of those stairs were at the direction or a requirement of the employer in that case. In the Commission's decision, they make a very strange analysis. She argued she was in a hurry, and she presented a number of elaborations on her case or justifications, including short staff. They said that that was tautological and not elucidating because it relied on her subjective experience, which they found to be immaterial to the analysis. That's nonsense. I will have to admit that I had to look up the word tautological. I did not know what that meant. But from my understanding in reading that paragraph is that they were saying she was saying in multiple different ways that she perceived herself to be in a rush. Exactly, but she perceived herself to be in a rush because of her work. So it's not immaterial. Well, the distinguishing statement, I think what they were trying to do was distinguish that she may have felt or perceived that she was in a rush, but she failed to prove that she was in a rush at the direction of respondent. So that she may have perceived herself to be in a rush, and I would imagine quite a few of us can feel we're in a rush, but that doesn't necessarily mean that you are, in fact, in a rush. Well, if she was in a rush in furtherance of her employer's business, then why is that immaterial? From my standpoint, she was not in a rush in furtherance of her employment. Counsel, can I interrupt you? Are you saying that her perception that she was in a rush wasn't what was objectively observed? She wasn't moving about in a hurried manner, but she had this sense that she was hurried? Correct. Okay. So, in fact, when she was on the stairs, she was moving at a normal pace, not a hurried pace? Correct. Okay. And you're saying that the evidence in support of that is that C-260, that she was walking down the stairs? That's correct. But that's not what the commission found, is it? Are you referring back to the tautological? The commission did not find she was walking. The commission found that her explanation that she was hurried was immaterial because it was subjective. That's what the commission found. It's on page four of their decision, the first full paragraph. Correct. So they didn't find she was walking? Well, I mean, the commission, I think, I wish I could explain with the commission what their mindset is in terms of that specific paragraph. I could say what I think, you know, my interpretation, I think what that was read, it was just from her own perception, she said it in three or four different ways of how she felt she was in a rush. I believe, from the facts that were established in the case, that this was her own self-perception. But she didn't establish, even in the record, she didn't say she was running down the stairs when this happened. Didn't you say, though, I might have been running? I thought there was a reference in here in the record that you said, I might have been running, but I'm not sure. Well, she was in a hurry. She justified. I don't recall seeing that she said she was running. I think I might have, I would just go back, she's got to show by preponderance of the evidence if she was or if she was not. We have C-260, the accident report that says she was walking downstairs. She testified, I was in a hurry, I did so quicker than usual, but she said she didn't know if she was actually running. Is there a distinction, I mean, if she is rushing, just as Hoffman alluded to, in furtherance of her duties, does it have to be she was rushing at the specific direction of the employer? Wouldn't rushing because of the circumstances of your job be a sufficient basis to uphold it? Well, I think, from my standpoint, was there a reasonable basis in which to believe that this was in furtherance of the employment? She provided subjective reasoning as to why she thought she was in a rush. But it didn't drive with logic and common sense. She wanted to get this medicine to a student before the student left for the weekend. So this isn't necessarily a self-imposed, didn't she have a legitimate basis for trying to get this prescription to the student? Well, as I established in the case, though, she did not, there was no direction by a respondent that she had to get that prescription filled at the pharmacy. I'm sorry, I couldn't hear. Please interrupt me. What did you say? I said there was no evidence that she was directed to have to get that prescription filled out at that pharmacy at McKinley. The prescription could have been filled out at another pharmacy. But does that make a difference? Why would that make a difference if she actually believed that she was in furtherance of her employer's business and she chose this method? Why is her subjective belief immaterial? If that was the only requirement that was needed, every case from now on until the end of all work comp cases, petitioners will always testify that they felt like they were in a rush to get some job completed. They have to prove objectively that there is some reason that they were at the direction of the employer to actually work in a rush. You keep using direction of the employer. You got a case that says that? Or how about in furtherance of the employer's business? Well, if that goes to the village of Villa Park, I believe that that was one of the considerations that were made by this court, that they felt there was a direction. Well, that could be a direction. But is that the only way? I believe that is one of the factors. Whether it's the only way, I don't think that that's the only way. I fail to find a distinction between directed and in furtherance of the employer's business. Well, she was working as a nurse for the university at the time. What happened, though, she had an unexplained fall. She has to be able to explain from a qualitative or quantitative analysis whether or not that she was... Her job was to take it to the pharmacy. Correct. So she testified and she admitted that she had use of an elevator that she could have used. We know that. The question, whose job was it to take the sample to the pharmacy? The prescription? Yeah. Was it her job? That was one of the methods that she could do. Correct. One of the methods of getting the prescription to the pharmacy was from walking down the stairs. Maybe I can understand. She's a nurse, so she does tests and gives test results back to the person who sought the test. Am I correct? We had a co-ed, apparently, or someone who has an STD, and they went into the health clinic to find out if it was an STD, right? Yes. There's a student. I don't think we got into the whole specifics. Well, it's very important, because what is the employer's duties? I mean, what is a business, if in furtherance? I mean, that's what I'm trying to figure out. My understanding was that there was a student who had a test. I don't believe the evidence established that this nurse is the one that actually performed the test. But the nurse gives the results of the test to the student, correct? Probably? I don't know if that's necessarily true. From my experience, usually it's the doctors that will tell you what the results of the test are. I'm not aware of a nurse saying, here's what the results are. Now, is there any question that she would then have the prescription and would go down to the floor below to get the prescription filled out? Is that one of the duties? That's what I'm kind of getting at. I'm looking at, there's a script that someone wrote, which would have to be a physician, a licensed physician. And she's in possession of the script, apparently. She's to convey the script to the patient, which is a college student. Is it part of the nurse's duties to take a script and get a prescription filled for that student? I don't believe the evidence was established in this case that she was required to do that. I don't recall seeing anywhere in the transcript that getting that prescription filled was one of her job requirements. Well, we'll have to ask the opposing counsel, but I'm a little bit troubled. Is that important in the analysis? From my standpoint, it's whether or not... I do not believe that filling that prescription was incidental to her employment would be my position. I think that's, I mean, using the stairs, let me rephrase it. I don't believe using the stairs in question to get the prescription filled out was incidental to her employment. I don't believe the facts were established in this case. I think we can make assumptions. One of the things it's asking us to do is to make assumptions or to raise the level of conjecture. This goes to the 10 to 15 times on average. She never testified as to how many times that this was part of her job? She did testify. She said on average she would use those stairs 10 to 15 times. Well, not the stairs. The issue of whether or not she was part of her job duties to deliver the prescription. I don't recall her specifically stating that, and I could be incorrect, but I don't recall seeing that in the record that that was a job requirement. I'm troubled by the argument that this wasn't shown to be at the specific direction of the employer. Does an employer have to tell an employee to go down the stairs at certain times to be compensable? I mean, if within the scope of the person's duties, they at different times during the day go up and down stairs in furtherance of their job, why wouldn't that be sufficient? Why do you need a specific direction to be compensable? Based on the cases I reviewed, it appears to me that the appellate court has found that to be of distinction, when they found unexplained falls to be either compensable or not compensable. One of the factors that were considered was, was it at the direction of the employer? It's usually when we find that it is rising out of because the employer directed it, but I don't think that's the question. The question really is, was the person engaged in an activity that furthered their employer's business? In this particular case, the woman said she called the student up, told her the results, and the student said that she was going to go home for the weekend, but she needed to start taking her antibiotic, is what she testified to, and that she then testified that the pharmacy closes at 530, and she had to get the prescription down there so it would be available for the student to pick up. So you're saying that that's not in the furtherance of her duties for the hospital? Well, for me, I think it's important. She had use of an elevator. She said it was only going to take her one minute to use the elevator. You're avoiding the question I'm asking. I'm asking, was that behavior of taking the prescription, however she got it to the pharmacy, within the scope of her duties for the employer? It was within her scope. Okay, that's all. We're not arguing about in the course of, is that really in furtherance of the duties anyway? We're talking about arising out of, and arising out of, that's a neutral risk, so we're back to qualitative or quantitative to make it compensable. That's correct. And one thing, though, I do want to, from our standpoint, going into this. Maybe I'm missing something. Is it in the course of it happened on the employer's premises, arising out of, is a risk associated with the employment? No. In the course of doing the work for the employer. One of the issues was standard of review concerning the commission's decision. And from our standpoint, we just wanted to point out that we believe that it's based on the manifest weight of the evidence standard. Petitioner's brief indicates that there was no disputed facts. While you've heard from me today, we do have some disputes as to whether or not she was infected or not. Were you worried about a slippery slope of just saying perceptions, that I perceive that I should be in a hurry for my employer and that should be sufficient? And all I have to do is testify to that, right? That is my concern. But is there anything in the record that would make this a reasonable perception? Objectively? From my standpoint, I don't think the fact that she felt she was perceived. Here's what she's argued, and it's noted, is that this was February. Somehow February is a magical month that's more busier than any other month without any explanation. But she felt that that made it busier. They were short-staffed one nurse that day, and apparently that doesn't happen other times, and that made it busier that day. She also testified she had to do dial-a-nurse, which is an activity that they are normally used to doing anyway. But then this was her perception. I think that that's, even with her own self-perception, the fact remained that there was nothing to prove that she was running to go down the stairs. We don't have any evidence of that. The evidence to the contrary is that she was walking down the stairs. We have the evidence that she could not explain what caused her to fall. There was some illusion that there were some defects in the stairs, but she couldn't think that where these alleged defects were at were actually the cause of her fall. She didn't know where in the stairwell she actually fell. I would like to point out some distinguishing factors from our case to some of the cases that were cited by Petitioner's Counsel. So like in the Villa Park case... Is my time up? They're in my brief. Thank you very much for your time. Counsel, you may reply. Your Honor, to answer your earlier question, Ms. Jana Franks did testify that if she's the one who... Hypothetically speaking, if she's the one who charted the prescription, she'd be the one who'd take the prescription down to the pharmacy. So Jana Franks would testify that... So is taking the prescription down to the pharmacy via the stairs... Does that involve a risk connected with or incident to her employment? Yeah, I would believe it's a due... That's the definition for a rising up. Correct, Your Honor. Or as the Supreme Court said, a risk is incident to the employment if it belongs to or is considered with what the employer has to do in fulfilling their duties. Correct, I would agree with that. Or as they said, peculiar to if they've ever been consistent. Now, the other issue is the slippery slope part. I think if Respondent's Counsel had brought up any testimony to say some of these circumstances weren't accurate... If they brought an administrator, another witness saying, well, we weren't really that busy that day, or we weren't doing these type of... Dial a nurse is done every day and doesn't make anybody rush. None of that evidence is offered into evidence by Respondent. What was offered was two witnesses who were fairly consistent with what they were saying the circumstances of the day was. That was busy. And I think it's irrelevant to say if they're sometimes regularly busy. You can be regularly rushed for your employment and still be at an increased risk. I'm sorry to interrupt you. But in terms of this case, in terms of the qualitative aspect of the increased risk that you're arguing, shouldn't there be objective... It's quicker than normal, quicker than usual. And was there that evidence in this case? Did she testify in that way, or did she just use the word hurry? If I recall, Your Honor, she stated that she was... She doesn't recall what specifically caused her to fall, but she does recall that she was hurrying to complete her tasks. So is there specific evidence from her testimony or that can be reasonably inferred by the Commission that she was in fact descending the stairs at a rate quicker than normal? I would say yes, Your Honor, and I think the Commission, even though they ruled against me, even alluded to that. That's what they found, that she may have been rushing, that they inferred those facts from her testimony. And I think that is all I have, unless you have any other questions. I don't. I don't believe there are. Thank you, Your Honor.